UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES DOE,

                                Plaintiff,

v.                                                                  3:17-CV-0402
                                                                    (GTS/DEP)
CORNELL UNIVERSITY; ELIZABETH
MCGRATH, as agent for Cornell University;
JODY KUNK-CZAPLICKI, as agent for
Cornell University,

                                Defendants.
_____

APPEARANCES:                                         OF COUNSEL:

NESENOFF & MILTENBERG, LLP                ANDREW MILTENBERG, ESQ.
   Counsel for Plaintiff                             STUART BERNSTEIN, ESQ.
363 Seventh Avenue, 5th Floor                  TARA J. DAVIS, ESQ.
New York, New York 10001

SHAW LAW FIRM                                     WILLIAM R. SHAW, ESQ.
   Co-Counsel for Plaintiff
109 East Seneca Street
Ithaca, New York 14850

CORNELL UNIVERSITY OFFICE OF COUNSEL        JARED M. PITTMAN, ESQ.
   Counsel for Defendants                          VALERIE L. DORN, ESQ.
300 CCC Building, Garden Avenue            WENDY E. TARLOW, ESQ.
Ithaca, New York 14853

BOND, SCHOENECK & KING, PLLC              JONATHAN B. FELLOWS, ESQ.
   Co-Counsel for Defendants                     SUZANNE M. MESSER, ESQ.
One Lincoln Center
Syracuse, New York 13202


GLENN T. SUDDABY, Chief United States District Judge


**DECISION and ORDER**

Currently before the Court, in this civil rights action filed by James Doe ("Plaintiff") against Cornell University and two of its employees ("Defendants"), is a motion by Plaintiff for attorneys' fees pursuant to 42 U.S.C. § 1988.  (Dkt. No. 41.)   For the following reasons, Plaintiff's motion is granted in part and denied in part.

## I.        RELEVANT BACKGROUND

Because this Decision and Order is intended primarily for the review of the parties, the Court presumes the reader's familiarity with this Court's Text Order of October 2, 2018.  As directed, final judgment was entered in favor of Plaintiff on October 2, 2018.  (Dkt. No. 40.) Thereafter, Plaintiff timely filed the pending motion for attorneys' fees and costs.  (Dkt. No. 41.)

## II.       THE PARTIES' ARGUMENTS

### A.        Plaintiff's Memorandum of Law and Affidavits from Attorneys Miltenberg and Shaw

Generally, in support of his motion for attorneys' fees, Plaintiff argues that he is entitled to a total of $424,029.50 in attorneys' fees (of which $299,482.50 are attributable to Nesenoff & Miltenberg and $124,547.00 are attributable to Shaw & Murphy, PLLC) as the prevailing party in this matter, as well as further attorneys' fees expended in pursuit of this motion and prejudgment interest accruing from September 25, 2015.  (Dkt. No. 41, Attach. 1, at 12 [Miltenberg Aff.]; Dkt. No. 41, Attach. 32, at 12 [Shaw Aff.].)  This total also includes attorneys' fees related to Plaintiff's Article 78 special proceeding in New York State Court, which Plaintiff argues he is entitled to recover despite the fact that Plaintiff was only partially successful in the negotiated outcome there.  (Dkt. No. 41, Attach. 1, at 10-11; Dkt. No. 41, Attach. 32, at 11-12; Dkt. No. 41, Attach. 49, at 6 [Pl.'s Mem. of Law].)  This total also includes

2

$16,500.00[1] in attorneys' fees related to the preparation of the current motion for attorneys' fees. (Dkt. No. 41, Attach. 1, at 11.)

**B.  Defendants' Opposition Memorandum of Law and Affidavit from Attorney Fellows**

Generally, in opposition to Plaintiff's motion, Defendants assert three arguments.  First, Defendants argue that Plaintiff is not entitled to recover attorneys' fees incurred during the disciplinary proceedings or the Article 78 proceeding.  (Dkt. No. 44, at 10-16 [Defs.' Mem. of Law].)  More specifically, Defendants argue that, approximately half of the total fees sought by Plaintiff are not recoverable because they were not incurred in this litigation, and Plaintiff has not met his affirmative burden to establish that any discrete portion of that work was necessary for the litigation of this action.  (*Id*. at 10.)  Relatedly, Defendants argue that (a) Cornell's internal disciplinary proceedings were not part of an action or proceeding to enforce Plaintiff's Title IX rights, Plaintiff did not prevail in those proceedings, and a violation of Plaintiff's rights could not have occurred until the conclusion of those proceedings, (b) Plaintiff's Article 78 proceeding was not part of the action to enforce his Title IX rights and Plaintiff's sanction was reduced by the Cornell Appeal Panel unrelated to his Article 78 petition, which was denied because it was not ripe, and (c) Plaintiff failed to show that any discrete attorney work product resulting from the prior proceedings was useful and of a type ordinarily necessary to advance his Title IX action.  (*Id.* at 11-16.)

Second, Defendants argue that the amount of fees requested are excessive and

---

[1]    In his reply memorandum of law, Plaintiff states that the amount attributable to attorneys' fees related to the preparation of this fee request is $17,712.00, but the total amount sought by Plaintiff does not change.  (Dkt. No. 47, at 8.)

unreasonable.  (*Id.* at 16-27.)  More specifically, Defendants make the following objections to

Plaintiff's timekeeping and billing: (a) the hourly rates sought by Plaintiff's counsel are well in

excess of the prevailing rate in the Northern District of New York and the Court should disallow

entirely the time of attorneys whose credentials, qualifications, and experience are not

established, and (b) the fees claimed by Plaintiff should be reduced because (i) he is not entitled

to fees incurred after accepting the offer of judgment on August 31, 2018, (ii) block billing

prevents the Court from reviewing the entries for reasonableness and thus the fees should be

reduced by twenty percent, (iii) the entries are so vague as to be inadequate to establish

entitlement to compensation, (iv) he failed to justify the need to retain two law firms, for

duplicative work conducted by the two law firms, and for three partners and two associates to

each bill over 100 hours on this matter, (v) much of the work claimed was excessive and

unnecessary work, (vi) some entries relate to administrative or clerical tasks, (vii) he should only

be awarded travel time at a rate of 50%, and (viii) he is not entitled to pre-judgment interest

because the Offer of Judgment was silent as to pre-judgment interest.  (*Id.*)

　　　　Third, and last, Defendants argue that Plaintiff did not achieve success through litigation

and any award of attorneys' fees must reflect that lack of success.  (*Id.* at 27.)  More specifically,

Defendants argue that Plaintiff's application is excessive compared to the relief he sought and

the limited relief that he achieved such that the attorneys' fee award should be reduced to

$50,000.00.  (*Id.* at 27-29.)

### C.    Plaintiff's Reply Memorandum of Law

　　　　Generally, Plaintiff makes five arguments in reply to Defendants' opposition

memorandum of law and Attorney Fellows' Affidavit.  (Dkt. No. 47 [Pl.'s Reply Mem. of Law].)

First, Plaintiff argues that Defendants misrepresent the significance and importance of Plaintiff's success in the Article 78 and disciplinary proceedings.  (*Id*. at 1-3.)  More specifically, Plaintiff argues that his ability to graduate "on time" (a fact that Defendants point to as evidence that Plaintiff has not been damaged) was solely attributable to his necessary and successful Article 78 and appeal of the disciplinary proceedings.  (*Id.*)

Second, Plaintiff argues that Defendants incorrectly discount the amount of work performed by counsel during litigation of the federal case, including the following: (a) the mediation session where, with prior approval of the mediator, Plaintiff was available at all times by phone and conveyed a good-faith settlement demand to resolve the matter, (b) extensive document discovery, (c) retention of and preparation with experts including the exchange of expert reports, (d) preparation for, and participation in, the mediation settlement discussions, (e) preparation and defense of Plaintiff at his deposition, and (f) preparation for depositions of all defense witnesses (which ultimately did not occur because this case was resolved).  (*Id*. at 3-5.)

Third, Plaintiff argues that, as shown in his moving brief, since counsels' retention in the fall of 2015, all actions undertaken by counsel were performed with the understanding and intent that litigation in federal court was imminent.  (*Id.* at 5-6.)  In addition, Plaintiff argues that at least fifty pages of the seventy-page Amended Complaint discussed facts and legal claims unique to Plaintiff, including his experience at Cornell, Cornell's historic pattern of gender-biased decision-making, and the actions of Defendants during Plaintiff's disciplinary proceeding.  (*Id.*)

Fourth, Plaintiff argues that Defendants misrepresent the experience and expertise of Attorneys Bernstein and Davis.  (*Id.* at 6-8.)  Moreover, Plaintiff argues that, because of the interrelated nature of Plaintiff's federal and state law claims and legal theories, the attorneys' fee

award should not be reduced on the grounds that he did not prevail on every cause of action alleged.  (*Id.* at 7.)

Fifth, and finally, Plaintiff argues that his moving papers directly address the necessity of retaining more than one attorney given the complexity of the issues presented and the varying expertise of the firms retained.  (*Id.* at 7-8.)

## III.    GOVERNING LAW

Pursuant to Section 1988, "[i]n any action or proceeding to enforce a provision of [42 U.S.C. §1983] . . . , the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]"  42 U.S.C. § 1988.  Under Section 1988, there is a two-part test for determining whether a party is entitled to receive reasonable attorney's fees.  First, the party seeking attorney's fees must be a "prevailing party."  *Farrar v. Hobby*, 506 U.S. 103, 109 (1992).  A party is considered a "prevailing party" if "actual relief on the merits of his claim materially alters the legal relationship between the parties."  *Rivera v. Horton*, 7 F. Supp. 2d 147, 149 (N.D.N.Y. 1998) (quoting *Farrar*, 506 U.S. at 111-12).  Where a party obtains prevailing-party status, "the court's discretion to deny a fee award to a prevailing plaintiff is narrow."  *N.Y. Gaslight Club, Inc., v. Carey*, 447 U.S. 54, 68 (1980).  "[I]n [the] absence of special circumstances a district court not merely 'may' but *must* award fees to the prevailing plaintiff."  *Indep. Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 761 (1989) (emphasis in original).

Second, the party seeking attorney's fees must prove that his requested fee is "reasonable."  *Pino v. Locascio*, 101 F.3d 235, 237 (2d Cir. 1996); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In determining whether the moving party has satisfied its burden, the court must calculate a "presumptively reasonable fee."  *Bergerson v. N.Y. State*

*Office of Mental Health, Cent. N.Y. Psych. Ctr.*, 652 F.3d 277, 289 (2d Cir. 2011).

Traditionally, courts have determined a "reasonable attorney's fee" by calculating the lodestar–the product of the number of hours required by the matter and a reasonable hourly rate. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 [2010]; *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 [2d Cir. 2008]).  A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  *Bergerson*, 652 F.3d at 289-290 (internal quotation marks omitted).[2]  The court must refer to "the prevailing [market rates] in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Farbotko v. Clinton Cnty. of New York*, 433 F.3d 204, 208 (2d Cir. 2005) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984))  A determination of the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel[, which] may, of course, include judicial

---

[2]     In determining what is reasonable, the following factors are useful:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 [5th Cir. 1974]).

7

notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Farbotko*, 433 F.3d at 209.

The reasonable amount of time spent on a matter depends in part on the degree of difficulty of the factual and legal issues involved. *Hofler v. Family of Woodstock, Inc.*, 07-CV-1055, 2012 WL 527668, at *5 (N.D.N.Y. Feb. 17, 2012). Courts may reduce from the lodestar calculation hours that are "excessive, redundant, or otherwise unnecessary" and consequently are not reasonable. *Hofler*, 2012 WL 527668, at *5 (citing *Hensley*, 461 U.S. at 434). In considering the number of reasonably expended hours, the court "has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Hensley*, 461 U.S. at 434; *see also Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1146 [2d Cir. 1983]). The court should also consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

Finally, it is important to note that the fee applicant bears the burden of documenting the hours reasonably expended and the reasonable hourly rates. *Hensley*, 461 U.S. at 437. To demonstrate that a fee request is reasonable, "a party seeking an attorney's fees award 'must support that request with contemporaneous time records that show, for each attorney, the date, the hours expended, and the nature of the work done.'" *Kingvision Pay-Per-View, Ltd. v. Castillo Rest. Corp.*, 06-CV-0617, 2007 WL 841804, at *6 (E.D.N.Y. Jan. 16 2007) (quoting *Cablevision Sys. New York City Corp. v. Diaz*, 01-CV-4340, 2002 WL 31045855, at *5 [S.D.N.Y. July 10, 2002]).

IV.     ANALYSIS

A.     Whether Plaintiff Is Entitled to Attorneys's Fees for Work Performed
Related to His Article 78 and Disciplinary Proceedings

After careful consideration, the Court answers the above question almost entirely in the

negative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 44.)  To those

reasons, the Court adds the following analysis, which is intended to supplement but not supplant

Defendants' reasons.

"Section 1988 permits a court to shift to defendant only those legal fees incurred in

'proceedings to enforce' a few listed federal statutes.  When proceedings in state courts or

agencies are part of the 'enforcement' of § 1983, then time reasonably devoted to them is

compensable.  But rights under labor contracts and local civil service laws do not arise under the

Constitution or federal statutes, and efforts to secure their benefits in state forums are not

'proceedings to enforce' § 1983."  *Barrow v. Falck,* 977 F.2d 1100, 1104 (7th Cir. 1992) (citing

*New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 65 [1980]; *N. Carolina Dep't of Transp. v.*

*Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 [1986]; *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*,

471 U.S. 234, 242 [1985]).  "The time that is compensable under § 1988 is that 'reasonably

expended *on the litigation*."  *Webb.*, 471 U.S. at 242 (citing *Hensley v. Eckerhart*, 461 U.S. 424,

433 [1983]).  "[S]ome of the services performed before a lawsuit is formally commenced by the

filing of a complaint are performed 'on the litigation.'  Most obvious examples are the drafting

of the initial pleadings and the work associated with the development of the theory of the case."

*Webb*, 471 U.S. at 243.

"When the attorney's fee is allowed 'as part of the costs'–to use the language of the

statute–it is difficult to treat time spent years before the complaint was filed as having been

'expended on the litigation' or to be fairly comprehended as 'part of the costs' of the civil rights action." *Id.* at 242.

Here, Plaintiff is not seeking a "discrete portion" of the fees incurred in connection with his disciplinary proceeding or Article 78 state court action. (*See generally* Dkt. No. 41.) *See also Webb*, 417 U.S. at 243 ("The petition made no suggestion below that any discrete portion of the work product from the administrative proceedings was work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement."). Instead, Plaintiff seeks attorneys' fees for all time spent during those proceedings. (Dkt. No. 41, Attach. 1, at ¶¶ 37-39; Dkt. No. 41, Attachs. 3-31; Dkt. No. 41, Attach. 32, at ¶¶ 47, 93-96; Dkt. No. 41, Attachs. 34-47.) While Plaintiff's counsels' work was beneficial for him in the sense that he was able to graduate from Cornell on time, it was not necessary to bring the Title IX action or any of his other claims. Moreover, Attorney Miltenberg's assertion that, from the moment of his retention "forward, every action we took with respect to the representation of Plaintiff was in anticipation of" a Title IX federal lawsuit (Dkt. No. 41, Attach. 1, at ¶ 37) is insufficient to establish that every task they performed while defending Plaintiff in the disciplinary proceeding and in bringing the Article 78 proceeding was necessary to Plaintiff's civil rights litigation. *See Clark v. Bd. of Educ. of Tp. of Neptune*, 907 F. Supp. 826, 830 (D.N.J. 1995) (holding that plaintiff's counsel's argument that, but for their work during the tenure proceeding, there would not have been a settlement of this § 1983 lawsuit, insufficient to establish a link between the services rendered during the tenure proceedings and the plaintiff's § 1983 suit).

However, the Court finds that there were certain entries in Defendants' billing statements

10

during the pre-Complaint period that did reasonably relate to this federal lawsuit.  More specifically, although Nesenoff & Miltenberg billed $103,977.50 (178.35 hours) for the time period of October 6, 2015, through January 19, 2017, only two entries (1.80 hours) appear to relate to Plaintiff's Title IX federal Complaint: (1) November 15, 2016, entry for 1.20 hours conducting "research to determine whether any basis to proceed in federal court now" (Dkt. No. 41, Attach. 11, at 3), and (2) December 9, 2016, entry for 0.60 hours conferencing regarding "whether to file complaint in federal v. state court and strategy considerations" (Dkt. No. 41, Attach. 12, at 2.)  Additionally, for the period from March 1, 2017, to April 10, 2017 (the day before the initial Complaint was filed in this action), Nesenoff & Miltenberg billed 19.60 hours for work related to preparation and filing of the Complaint.  (Dkt. No. 41, Attach, 14; Dkt. No. 41, Attach. 15.)

Similarly, Shaw & Murphy billed $74,000.10 for the time period from September 24, 2015, through November 18, 2016.  (Dkt. No. 41, Attachs. 34-41.)[3]  However, of that amount, the Court finds that only 2.3 hours of the billed time appear to relate to Plaintiff's Title IX federal Complaint: (1) October 13, 2015, entry for 0.50 hours conducting "[o]nline research on JK, Sex Assault and Title IX" (Dkt. No. 41, Attach. 35, at 3); (2) October 20, 2015, entry for 0.40 hours traveling "to/from CISER Hall for mtg about Title IX complaint" (*id.* at 4); (3) October 20, 2015, entry for 1.00 hours meeting "with EM for rights and options and issues related to Title IX Complaint by KF" (*id.*); and (4) November 16, 2016, entry for 0.40 hours on a

---

[3]       The Court is unable to calculate the number of hours billed by Shaw & Murphy during this time period because, for the time period from December 16, 2015, through March 11, 2016, Plaintiff only provided a statement without any attached invoice detailing the time records. (Dkt. No. 41, Attach. 37.)

phone conference with AM regarding an article "on new lawsuit vs. CU for Title IX

Discrimination" (Dkt. No. 41, Attach. 41, at 5).

Shaw & Murphy also billed $8,989.40.00 (37.41 hours) for the time period from

November 19, 2016, to April 10, 2017 (the date before the initial Complaint in this action was

filed).  (*See* Dkt. No. 41, Attach. 42.)  However, of that amount, the Court finds that only 16.8

hours of the billed time appear to relate to Plaintiff's Title IX federal Complaint.[4]

---

[4]        The Court finds the following 30 entries from that invoice detailing the time
records appeared to relate to Plaintiff's Title IX federal Complaint: (1) December 13, 2016, entry
for 0.25 hours emailing regarding "new litigation in fed court" (*id.* at 3); (2) January 3, 2017,
entry for 0.50 hours reviewing "files for docs and exhibits for litigation in Fed Ct" (*id.*); (3)
January 10, 2017, entry for 0.30 hours emailing "AM and TD to set up oh cnf on new litigation"
(*id.* at 4); (4) January 12, 2017, entry for 0.35 hours conferencing with "AM, TD re: Complaint"
(*id.*); (5) January 23, 2017, entry for 0.80 to "secure pleadings" (*id.*); (6) January 24, 2017, entry
for 1.00 hours conferencing with AM regarding "steps ahead in NDNY" (*id.*); (7) February 3,
2017, entry for 0.35 hours discussing "with law clerk some Title IX research already done" (*id.*);
(8) February 8, 2017, entry for 1.00 hours researching "Title IX issues" (*id.* at 5); (9) February
10, 2017, entry for 0.15 hours emailing with TD regarding the federal Complaint (*id.*); (10)
February 12, 2017, entry for 0.25 hours emailing with comments regarding the draft Complaint
(*id.*); (11) February 14, 2017, entry for 0.40 hours reviewing draft Complaint (*id.*); (12) February
15, 2017, entry for 0.45 hours continuing to review the draft Complaint (*id.*); (13) February 16,
2017, entry for 0.25 hours starting detailed edits (*id.*); (14) February 17, 2017, entry for 1.35
hours making further edits to the draft Complaint (*id.*); (15) February 20, 2017, entry for 0.20
hours making further edits to the draft Complaint (*id.*); (16) February 21, 2017, entry for 0.30
hours making further edits to the draft Complaint (*id.*); (17) February 22, 2017, entry for 0.40
hours continuing to edit the draft Complaint (*id.*); (18) February 23, 2017, entry for 0.20 hours
reviewing "article on related and substantial federal court success on Title IX claims" (*id.*); (19)
February 23, 2017, entry for 0.70 hours making further edits to the draft Complaint (*id.*); (20)
March 9, 2017, entry for 0.70 hours reading "Dow v. Cornell" (*id.*); (21) March 10, 2017, entry
for 1.00 hours reviewing draft Complaint (*id.*); (22) March 12, 2017, entry for 0.50 hours further
reviewing the revised Complaint (*id.*); (23) March 13, 2017, entry for 1.00 hours continuing to
review and make comments on factual allegations in final draft of the Complaint (*id.*); (24)
March 16, 2017, entry for 0.35 hours finishing review of final draft of the Complaint (*id.*); (25)
March 16, 2017, entry for 0.55 hours reviewing comments and finishing edits to the factual
portion of the Complaint (*id.*); (26) March 17, 2017, entry for 0.75 hours reviewing edits to the
causes of action and updates on the McGrath video (*id.*); (27) March 17, 2017, entry for 1.35
hours reviewing, editing, and responding to email regarding additional causes of action and
claims based on the McGrath video (*id.* at 6); (28) March 21, 2017, entry for 0.15 hours emailing
regarding the McGrath video (*id.*); (29) March 28, 2017, entry for 0.55 hours emailing regarding

For all of these reasons, the Court denies Plaintiff's request for attorneys' fees that relate to the disciplinary proceeding and Article 78 state court lawsuit with the exception of the hours noted above that appear to relate to Plaintiff's Title IX Complaint.  The Court finds that the total allowable hours for the period ending April 10, 2017, are as follows: 21.4 hours for an attorney designated as "TJN" in Nesenoff & Miltenberg's records who appears to be Attorney Davis,[5] 13.50 hours for Attorney Shaw, and 3.35 hours for various Shaw & Murphy paralegals and/or law clerks.

**B.     Whether the Attorneys' Fees Sought by Plaintiff Are Excessive and Unreasonable**

After careful consideration, the Court answers the above question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 44.)  To those reasons, the Court adds the following analysis, which is intended to supplement but not supplant Defendants' reasons.

**1.     Whether the Hourly Rates Requested Are Reasonable**

Fee awards are governed by the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008).  Pursuant to *Arbor Hill*, a court must first consider whether the rates at which compensation is sought are those that a "reasonable, paying client would be willing to pay" before multiplying that figure by

---

draft changes based on the McGrath video (*id.*); and (30) March 31, 2017, entry for 0.70 hours emailing regarding filing the complaint and changes to the Complaint based on the McGrath video (*id.*).

[5]     Although Nesenoff & Miltenberg does not specifically state who TJN is, the Court finds that the content of the time records suggest that TJN is Attorney Davis; in particular, TJN billed time related to attending the mediation in this case, and other evidence supports that it was Attorney Davis who attended the mediation for Nesenoff & Miltenberg.

the number of hours expended.  *Arbor Hill*, 522 F.3d at 190-91; *see also Lewis v. City of Albany Police Dep't*, 554 F.Supp.2d 297, 298 (N.D.N.Y. 2008) ("Attorney's fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expended hours.").  The rate at which a reasonable client would be willing to compensate for the services rendered is determined by several factors of varying degrees of relevance,

> including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively . . . the timing demands of the case, [and] whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation . . . .

*Arbor Hill*, 522 F.3d at 184.  Moreover, Courts are to consider the "Johnson factors" when establishing a reasonable rate:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3, 190 (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 [5th Cir. 1974] ).  The Second Circuit also cautioned that a court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Arbor Hill*, 522 F.3d at 190.

### a.      Attorney Miltenberg

Plaintiff requests a rate of $550.00 per hour for the work performed by Attorney Miltenberg.  (Dkt. No. 41, Attach. 49, at 15 [Pl.'s Mem. of Law].)  However, this requested rate is far above the rate deemed to be reasonable for partners in this district.  *See Cruz v. Sal-Mark Restaurant Corp.*, 17-CV-0815, 2019 WL 355334, at *7 (N.D.N.Y. Jan. 28, 2019) (Stewart, M.J.) (noting that "[r]ecent cases in the Northern District have upheld hourly rates between $250 and $350 for partners") (quoting *Deferio v. City of Syracuse*, 16-CV-0361, 2018 WL 3069200, at *3 [N.D.N.Y. June 21, 2018] [Kahn, J.]); *Premium Sports, Inc. v. Nichols*, 2018 WL 3574870, at *9 (N.D.N.Y. July 25, 2018) (Suddaby, C.J.) (reducing the requested hourly rate for a partner with over 20 years of federal civil practice experience from $350 to $300); *Parish v. Kosinski*, 17-CV-0344, 2018 WL 1475222, at *5 (N.D.N.Y. Feb. 5, 2018) (Peebles, M.J.) (granting a rate of $350 per hour for partners).  As Defendants note in their opposition memorandum of law, Plaintiff cites entirely to cases from the Southern District of New York (where rates tend to be higher than in the Northern District of New York) in support of his contention that the requested rate is reasonable.  (Dkt. No. 41, Attach. 49, at 15 [Pl.'s Mem. of Law].)

Additionally, Plaintiff has failed to justify an award of out-of-district rates because he has not shown that litigating this case required special expertise not available within this District. Notably, Attorney Miltenberg's citation to his expertise and experience with Title IX law does not, by itself, suggest that a successful outcome could not have been achieved by a lawyer from this district; rather, Attorney Miltenberg states only that "my firm had the resources to litigate this case in both state and federal court, while Mr. Shaw had a great deal of institutional knowledge concerning Cornell University."  (Dkt. No. 41, Attach. 1, at ¶¶ 55-56 [Miltenberg Aff.].)  Attorney Shaw states in his affidavit that he has represented clients in this District since 1985, is very familiar with anti-discrimination claims, and has worked on cases in fields of law

related to employment discrimination, sexual assault, and campus defense, including

collaborating with other law firms in state and federal litigation on behalf of male respondents

charged with campus sexual assault.  (Dkt. No. 41, Attach. 32, at ¶¶ 22-32 [Shaw Aff.].)

Attorney Shaw also states that his experience to litigate the case was "dated" and he did not have

the internal staff resources to litigate, while Nesenoff & Miltenberg did have those resources.

(*Id.* at ¶¶ 73-74.)  All of this evidence establishes that it was primarily financial and human

resources concerns, rather than a lack of legal competence to handle the matter on Attorney

Shaw's part, that led to the retention of the attorneys at Nesenoff & Miltenberg (including

Attorney Miltenberg himself); such need for additional resources does not suggest that Attorney

Miltenberg should be entitled to be compensated at an out-of-district rate.  *See Grant v. City of

Syracuse*, 15-CV-0445, 2019 WL 535542, at *11 (N.D.N.Y. Feb. 8, 2019) (Hurd, J.) (reducing

plaintiffs' lead counsel's hourly rate to $350.00 where plaintiffs appeared to assume that local

counsel could not have achieved a successful result in this action without inquiring into the

competence and expertise of attorneys within this District).  However, as a result of his

demonstrated experience in Title IX matters and his position as a partner, Attorney Miltenberg

will be awarded an hourly rate on the high end of the reasonable rates within the Northern

District of New York and will therefore be compensated at the rate of $350.00 per hour.

### b.   Attorney Bernstein

Plaintiff requests a rate of $550.00 per hour for work performed by Attorney Bernstein.

(Dkt. No. 41, Attach. 49, at 15 [Pl.'s Mem. of Law].)  Attorney Bernstein received his juris

doctorate degree in 1990.  (Dkt. No. 41, Attach. 1, at ¶ 41.)  During his 29 years in practice, he

has been practicing civil law for approximately 12 years, including conducting civil jury trials to

verdict and acting as lead counsel in private mediations.  (*Id.* at ¶¶ 42-43.)  However, it not clear whether Attorney Bernstein had any specialized expertise in the area of civil rights or Title IX actions prior to joining Nesenoff & Miltenberg in July 2017.  (*Id.* at ¶ 45.)  For senior attorneys with more than ten years experience, the Northern District has found that an hourly rate within the range of $250 to $350 is appropriate.  *Grant*, 2019 WL 535542, at *11; *see also Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 27-28 (N.D.N.Y. 2015) (D'Agostino, J.) (noting that courts in this District have found a reasonable rate for an experienced civil rights attorney ranged between $225 to $295 per hour since 2008, and concluding that the reasonable rate for attorneys with 20 or more years of experience ranged from $235 to $300 per hour); *Pope v. Cty. of Albany*, 11-CV-0736, 2015 WL 5510944, at *10 (N.D.N.Y. Sept. 16, 2015) (Kahn. J.) (finding reasonable rates of $350 per hour for an attorney with more than 35 years of experience and $200 for an attorney with five years of experience).  Upon review of the affidavits and documents submitted, the Court finds that $250.00 per hour is the appropriate hourly rate for Attorney Bernstein based on a balance between his long tenure as a practicing attorney and his relative lack of experience in Title IX and civil rights matters specifically.

### c.      Attorney Davis

Plaintiff also requests a rate of $550.00 per hour for work performed by Attorney Davis. (Dkt. No. 41, Attach. 49, at 15 [Pl.'s Mem. of Law].)  Attorney Davis received her juris doctorate degree in 2009.  (Dkt. No. 41, Attach. 1, at ¶ 48.)  During her ten years in practice, she spent approximately five-and-one-half years focused on insurance law.  (*Id.* at ¶ 50.)  For approximately the last four years, Attorney Davis has focused her practice on representing students accused of misconduct at colleges and universities.  (*Id.* at ¶ 51.)  As an attorney with

ten years experience and somewhat significant experience in Title IX matters specifically, the

Court finds that $250.00 per hour is also the appropriate hourly rate for Attorney Davis.

### d.      Attorney Shaw

Plaintiff requests a rate of $300.00 to $375.00 per hour for work performed by Attorney

Shaw, depending on whether the work performed was or was not litigation related.  (Dkt. No. 41,

Attach. 49, at 15 [Pl.'s Mem. of Law].)  Attorney Shaw has practiced law for forty-two years.

(Dkt. No. 41, Attach. 32, at ¶ 14.)  Since 1984, Attorney Shaw has been a general practitioner,

practicing in the areas of employment, discrimination, criminal defense, campus judicial defense,

business, corporate, environmental, municipal, estate, family, and real estate law.  (*Id.* at ¶ 15.)

As a senior attorney with extensive practice experience, and experience in anti-discrimination

and campus sexual assault defense specifically, the Court finds that $330.00 per hour is the

appropriate hourly rate for Attorney Shaw.

### e.      Unnamed Attorneys

Plaintiff requests a rate of $350.00 per hour for work performed by associate attorneys

with Nesenoff & Miltenberg.  (Dkt. No. 41, Attach. 49, at 15 [Pl.'s Mem. of Law].)  "[T]he

burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own

affidavits–that the requested rates are in line with those prevailing in the community for similar

services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v.

Stenson*, 465 U.S. 886, 895, n.11 (1984).  Where the fee applicant omits any explanation of the

qualifications or experience of the other attorneys who worked on the case, "the prevailing rate

for less experienced associates, $120, is the only assuredly reasonable rate."  *Miller v. City of

Ithaca, New York*, 10-CV-0597, 2017 WL 61947, at *3 (N.D.N.Y. Jan. 5, 2017) (Sharpe, J.).

The Court therefore finds that $120.00 per hour is the appropriate hourly rate for the unidentified associate attorneys given that Plaintiff has provided no discussion of these associate attorneys' experience or backgrounds.

        **f.**        **Paralegals**

Nesenoff & Miltenberg requests a rate of $150.00 per hour for work performed by its paralegals, while Shaw & Murphy requests a range of $100.00 to $125.00 for work performed by its paralegals. depending on the specific paralegal or law clerk who performed the work.  (Dkt. No. 41, Attach. 1, at ¶ 65 [Miltenberg Aff.]; Dkt. No. 41, Attach. 49, at 11 [Pl.'s Mem. of Law].)  However, the current prevailing rate for paralegal time in this district is $90.00.  *See Cruz*, 2019 WL 355334, at *7 (noting that this district has recently upheld hourly rates of between $80 and $90 for paralegals); *Nichols*, 2018 WL 3574870, at *9 (granting paralegal fees at a rate of $90 per hour); *Deferio*, 2018 WL 3069200, at *9 (allowing an hourly rate of $90 for paralegals); *Parish*, 2018 WL 1475222, at *5 (granting paralegal fees at the requested rate of $90 per hour).  The Court therefore finds that Plaintiff's requests for compensation of paralegal time are more appropriately compensated at the rate of $90.00 per hour.

        **2.**        **Whether the Hours Claimed by Plaintiff's Attorneys Are Excessive and Unreasonable**

Defendants point out several bases for a downward adjustment of the hours billed.  (Dkt. No. 44, at 19-27.)  The Court agrees that the hours billed are unreasonable for the reasons offered by Defendants.  "Instead of engaging in an interminable review of the billing records and making a corresponding reduction of the hours in line-by-line fashion, the more sane approach is simply to impose a percentage reduction on the lodestar."  *Miller*, 2017 WL 61947, at *4 (citing *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d

91, 96 [2d Cir. 2006]).

The degree of success is also a factor this Court may consider when determining what amount of fees is reasonable.  *See Hensley*, 461 U.S. at 435 (noting that, when calculating an award of reasonable attorneys' fees, the "results obtained" is a factor that is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief").  As for what amount of reduction is warranted, the Supreme Court has noted that "[t]here is no precise formula" for determining whether a party's award should be increased or reduced based on the level of success, and indicated that "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."  *Hensley*, 461 U.S. at 436-37; *Miller*, 2017 WL 61947, at *4 ("Instead of engaging in an interminable review of the billing records and making a corresponding reduction to the hours in line-by-line fashion, the more sane approach is to simply impose a percentage reduction of the lodestar.").

Based on the Court's review of the time records, the Court finds that, for the period after April 11, 2017 (including work expended in preparing the motion for attorneys' fees),[6] Nesenoff & Miltenberg billed a total of 343.45 hours, and Shaw & Murphy billed a total of 190 hours. More specifically, the Court finds that the record shows the following totals per attorney or staff member: (1) 141.70 hours for Attorney Davis; (2) 86.80 hours for Attorney Bernstein; (3) 17.15 hours for Attorney Miltenberg; (3) 1.7 hours for an unnamed attorney; (4) 96.10 hours for work

---

[6]     The Court notes that, although Plaintiff requests compensation for time spent in preparing its reply memorandum of law to Defendants' opposition to Plaintiff's motion for attorneys' fees and costs, he does not indicate what amount of time was spent on that reply, or who performed the work.  (Dkt. No. 47, at 8 [Pl.'s Reply Mem. of Law].)  Plaintiff has therefore failed to meet his burden to show entitlement to compensation for that work.

on a discovery index and related work that appears appropriate for a paralegal; (5) 91.19 hours for Attorney Shaw; (6) 92.09 for an unidentified associate attorney with Shaw & Murphy; and (7) 7.40 hours for what appears to be various paralegals.[7]  Based on these figures and the reasonable hourly rates discussed above, the Court finds the following totals for the purpose of calculating the lodestar: (1) $35,425.00 for Attorney Davis; (2) $21,700.00 for Attorney Bernstein; (3) $6,002.50 for Attorney Miltenberg; (4) $204.00 for the unnamed attorney with Nesenoff & Miltenberg; (5) $8,649.00 for the work of paralegals with Nesenoff & Miltenberg; (6) $30,092.70 for Attorney Shaw; (7) $11,050.80 for the unidentified associate attorney with Shaw & Miller; and (8) $666.00 for the work of paralegals with Shaw & Murphy.  Additionally, for the period before April 10, 2017, Plaintiff's attorneys earned the following totals: (1) $5,350.00 for Attorney Davis; (2) $4,455.00 for Attorney Shaw; and (3) $301.50 for paralegals at Shaw & Murphy.  This results in a total lodestar amount of $123,896.50

Based on the Court's overall sense of the case (including, *inter alia*, Plaintiff's request for attorneys' fees that are over three times as large as the settlement amount, the historical phase during which the case settled, Plaintiff's limited success in obtaining the relief he sought, issues related to duplicative billing between the two law firms, and the other reasons raised by Defendants) the Court finds that a one-third reduction is warranted, resulting in a total attorneys' fee award of $82,597.67.

---

[7]     The Court notes that neither law firm representing Plaintiff submitted a computation of the number of hours expended by the individual attorneys and support staff involved in the relevant work.  (Dkt. No. 41, Attach.1, at ¶ 65 [Miltenberg Decl.] [asserting a firm-wide total of 545.65 hours]; Dkt. No. 41, Attach. 32, at [Shaw Decl.] [failing to indicate any total of hours billed].)  These totals have been calculated from the various billing sheets submitted by Plaintiff for each law firm.

As a final note, the Court wishes to remind the parties of the Supreme Court's warning that "the determination of fees 'should not result in a second major litigation.'" *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437).

### C.      Whether Plaintiff Is Entitled to Litigation Costs

After careful consideration, the Court answers this question in the affirmative to the extent it finds that Plaintiff is entitled to some costs, but in the negative to the extent certain costs are unsubstantiated or excluded, as discussed below.

"An award for costs under [42 U.S.C. §] 1988 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Finch v. New York State Office of Children and Family Servs.*, 861 F. Supp. 2d 145, 157 (S.D.N.Y. 2012) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 [2d Cir. 1987]). This includes "not only those ordinarily recoverable pursuant to 28 U.S.C. § 1920 and Rule 54(d)(1) of the Federal Rules of Civil Procedure, but also any additional expenses ordinarily charged in the particular legal marketplace." *Robinson v. City of New York,* 05-CV-9545, 2009 WL 3109846, at *10 (S.D.N.Y. Sept. 29, 2009) (citing *United States Football League v. Nat'l Football League*, 887 F.2d 408 [2d Cir. 1989]). "'Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988 and are often distinguished from nonrecoverable routine office overhead.'" *Finch*, 861 F. Supp. 2d at 157 (quoting *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 [2d Cir. 1987]).

Plaintiff argues that he should be entitled to recover $13,477.76 in costs expended in the ordinary course of this litigation. (Dkt. No. 41, Attach. 49, at 21-22 [Pl.'s Mem. of Law].) However, Plaintiff has not provided any clear accounting of these costs in either the attorney

declarations or his memorandum of law.  Rather, reviewing the record, the Court finds only the following listed costs for the period beginning April 11, 2017: (1) $29.00 for overnight mail; (2) $400.00 for filing the Complaint; (3) $19.00 for "certified fee"; (4) $19.00 for "Tyree"; (5) $231.00 for an undisclosed expense; (6) $1,445.00 for "expert"; (7) $150.00 for "mediation"; (8) $499.05 for "travel"; (9) $39.03 for taxi/car service; (10) $513.34 for a hotel; (11) $419.34 for airfare; (12) $255.32 for "flight"; (13) $930 for "travel"; (14) $202.27 for a hotel; (15) $24.00 for parking; (16) $212.41 for a hotel; and (17) $105.00 for travel by Attorney Shaw to, and lunch at, a conference with Attorney Davis.  (Dkt. No. 41, Attach. 15, at 2; Dkt. No. 41, Attach. 18, at 3; Dkt. No. 41, Attach. 21, at 3; Dkt. No. 41, Attach. 27, at 3; Dkt. No. 41, Attach. 28, at 3; Dkt. No. 41, Attach. 31, at 4; Dkt. No. 41, Attach. 47, at 5.)  Even if assuming that all of these expenses are compensable, they total only $5,492.76, not the $13,477.76 requested by Plaintiff.

In addition, not all of these expenses appear to be supported or appropriate compensable costs.  Entries that include vague descriptions (or no description at all) of the nature of the cost must be disallowed.  Plaintiff is also not entitled to $1,445.00 for the services of an unnamed expert, as the Supreme Court has found that "a federal court is bound by the limit of [42 U.S.C.] § 1821(b)" related to reimbursement of fees for a party's own expert witness "absent contract or explicit statutory authority to the contrary."  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 439 (1987).  Expert witness fees are authorized as costs under 28 U.S.C. § 1920(3), but, as the Supreme Court found, they are bound by 28 U.S.C. § 1821(b), which limits witnesses to "an attendance fee of $40 per day for each day's attendance" including for the time necessarily spent in traveling to and from the place of attendance.  *BD v. DeBuono*, 177 F. Supp. 2d 201, 205 (S.D.N.Y. 2001).  Because Plaintiff does not provide any indication that this expert attended

more than one day (noting the expense on November 22, 2017, only), the Court finds that it may

grant Plaintiff only the $40 daily fee allowed by 42 U.S.C. § 1821(b).[8]

Based on the above, the Court finds that Plaintiff is entitled to costs in the amount of

$3,837.76.

### D.   Whether Plaintiff Is Entitled to Prejudgment Interest

After careful consideration, the Court answers this question in the negative for the

reasons stated in Defendants' opposition memorandum of law.  (Dkt. No. 44, at 26-27 [Defs.'

Opp'n Mem. of Law].)  To those reasons, the Court adds the following analysis.

"In a suit to enforce a federal right, the question of whether or not to award prejudgment

interest is ordinarily left to the discretion of the district court," as is the rate to be applied for

such interest.  *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998); *see also Fendi Adele

S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 614-26 (S.D.N.Y.

2010) (discussing calculating the prejudgment interest rate).  In determining whether to exercise

that discretion, the Court must take into consideration "'(i) the need to fully compensate the

wronged party for actual damages suffered, (ii) considerations of fairness and the relative

equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other

---

[8]      The Court notes that, although some civil rights statutes explicitly allow recovery of expert fees as part of attorneys' fees, the Court can find no indication that Title IX is one such statute.  *See DeBuono*, 177 F. Supp. 2d at 206 (noting that, while Section 1988[c] allows such recovery in actions to enforce a provision of 42 U.S.C. §§ 1981 and 1981a and Title VII and the ADA were amended to include recovery of expert fees as a part of attorneys' fees, other laws, such as 42 U.S.C. § 1983, the ADEA, and the FLSA, do not contain such provisions).  Nor does the record make clear who this expert was or what services he or she provided, a lack of specification that makes it impossible for the Court to determine whether the expert was "a reasonable out-of-pocket expense[] incurred by attorneys and ordinarily charged to their clients" if experts fees were permitted as part of attorneys' fees.  *United States Football League*, 887 F.2d at 416).

general principles as are deemed relevant by the court.'" *Gierlinger*, 160 F.3d at 873 (quoting *Secs. & Exch. Comm'n v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1476 [2d Cir. 1996]).

However, beyond these considerations, the question arises in this case as to whether the Court should exercise such discretion where, as here, the parties have consented to an Offer of Judgment pursuant to Fed. R. Civ. P. 68 that does not specifically provide for prejudgment interest.  Defendants rely on *Lewis v. Roosevelt Island Operating Corp.*, 16-CV-3071, 2018 WL 4666070 (S.D.N.Y. Sept. 28, 2018), which in turn relies on out-of-circuit precedent, to support their argument that prejudgment interest should not be awarded where the Offer of Judgment does not specifically entitle the prevailing party to prejudgment interest.  (Dkt. No. 44, at 26-27 [Defs.' Opp'n Mem. of Law].)  While courts within the Second Circuit have awarded prejudgment interest on Offers of Judgment, the available examples occurred in the context of a specific entitlement to that prejudgment interest in the Offer of Judgment itself.  *See Nat'l Credit Union Admin. Bd. V. UBS Secs. LLC*, 13-CV-6731, 2016 WL 1179203 (S.D.N.Y. Mar. 24, 2016) (granting prejudgment interest where the Offer of Judgment specifically provided for such recovery); *accord, United States v. City of New York*, 07-CV-2067, 2015 WL 1063403 (E.D.N.Y. Mar. 11, 2015).

The Court is persuaded by the rationale asserted by Defendants, at least to the extent that it supports a conclusion that the Court should not exercise its discretion to grant prejudgment interest here given that the parties, through the Offer of Judgment, have already determined what, in their opinions, is sufficient to compensate the damages suffered and what is a fair recovery.  The Judgment in this case was entered "in favor of Plaintiff and against Defendants in the amount of one hundred and twenty five thousand dollars ($125,000.00), exclusive of costs

and attorneys' fees accrued to date, on all causes of action alleged in Plaintiff's Amended

Complaint."  (Dkt. No. 40 [Judgment filed Oct. 2, 2018].)  Consequently, the parties do not

appear to have explicitly contemplated prejudgment interest as part of the award to Plaintiff, and

the Court does not interpret "costs" to include prejudgment interest.  *See Miller v. Dugan*, 764

F.3d 826, 830 (8th Cir. 2014) ("Prejudgment interest is not a 'cost' in the narrow sense that Rule

68 uses the term.").  Nor does the fact that Plaintiff asserted state claims along with his federal

claims change this outcome.  *See Miller*, 764 F.3d at 830 (denying prejudgment interest on Offer

of Judgment under Fed. R. Civ. P. 68 even on state tort claims because any such interest that he

may have been entitled to on those claims "was encompassed in the $40,000 judgment entered

by the district court").

For all of the above reasons, the Court finds that Plaintiff is not entitled to prejudgment

interest.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for attorneys' fees (Dkt. No. 41) is **GRANTED in

part** and **DENIED in part**; and it is further

**ORDERED** that Defendants are directed to make payment of attorneys' fees in the

amount of **EIGHTY TWO THOUSAND FIVE HUNDRED NINETY SEVEN DOLLARS

AND SIXTY SEVEN CENTS ($82,597.67)** and costs in the amount of **THREE THOUSAND

EIGHT HUNDRED THIRTY SEVEN DOLLARS AND SEVENTY SIX CENTS

($3,837.76)**.

Dated: April 11, 2019
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge

26